**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2306-17T2

MICHAEL ZEGARSKI,

     Plaintiff-Appellant/
Cross-Respondent,

v.

KELLEEN ZEGARSKI,

     Defendant-Respondent/
Cross-Appellant.

_____

     Submitted December 12, 2018 – Decided May 21, 2019

     Before Judges Koblitz, Ostrer and Currier.

     On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FM-20-0444-14.

     Richard Obuch, attorney for appellant/cross-respondent.

     Budd Larner, PC, attorneys for respondent/cross-appellant (David R. Tawil and Karolina A. Dehnhard, on the briefs).

PER CURIAM

This post-judgment matrimonial dispute pertains to the allocation of college expenses of the parties' third child, and to related attorney's fees. In response to the defendant-mother's motion, the Family Part ordered the plaintiff-father to contribute $10,000 toward his son's freshman-year college expenses, with a five-percent annual inflation adjustment for subsequent years. The court denied defendant's motion for fees.

Plaintiff thinks the amount is too high; defendant thinks it is too low. Plaintiff appeals, contending the award lacks sufficient support in the record, and that a plenary hearing was required. Defendant cross-appeals, arguing the parties' property settlement agreement (PSA) required plaintiff to contribute half their son's annual expenses at the out-of-state private university he attends, after accounting for financial aid. Defendant also contends the court should have imposed a deadline for payment. She also appeals from the denial of her fee motion.

Having reviewed the parties' arguments in light of the record and applicable principles of law, we conclude the parties' PSA is too indefinite to constitute an enforceable agreement regarding college expenses. We are constrained to remand the matter for reconsideration in light of the factors set

A-2306-17T2

forth in <u>Newburgh v. Arrigo</u>, 88 N.J. 529, 545 (1982) and N.J.S.A. 2A:34-23(a). The court shall revisit the issue of fees in light of its college expense allocation.

I.

The parties have four children. The eldest two were already attending a public New Jersey university when the parties divorced after a marriage of over twenty years. Their college expenses are not directly in issue, although plaintiff agreed in the PSA to sole responsibility for over $100,000 in debt related to their education. The future college expenses of the parties' fourth and youngest child are not before us.

Four years after the divorce, the parties' third child, whose educational expenses are at issue, began applying to colleges. He was interested in an engineering career. He ultimately received offers of admission to a private out-of-state university and Rutgers. He preferred the out-of-state school. However, plaintiff told him he could not afford to pay half the cost of attendance. Plaintiff adhered to his position when he accompanied his son and defendant on a university tour for accepted students. Despite his father's resistance, the young man matriculated at the out-of-state school for the 2017-2018 school year.

A-2306-17T2

In June 2017, defendant filed her request to compel plaintiff to pay half the post-financial-aid expenses.[1]  She invoked the PSA, which requires equal allocation of college expenses that are "reasonable and agreed upon."  The relevant provision states:

> All reasonable and agreed upon college and secondary education costs shall be divided between the parties after any and all financial aid is received by said children, the cost of which shall be paid with the Husband paying 50% of the cost and Wife paying 50% of the cost of same. . . .  Any and all reasonable and agreed upon extra-curricular activities shall be paid equally between the parties.

The PSA defines "education costs" as including, but not limited to "tuition, room, board, miscellaneous school fees, books, reasonable transportation to and from the school and any reasonable related costs and expenses."

The PSA also required the parties to consult with each other about the child's college plans, and to exchange tax information during the child's junior year of high school.  The consultation provision states: "The parties shall consult with each other and with the children with a view toward providing each child with the best education possible in view of their particular circumstances, each

---

[1] The month before, plaintiff filed a motion to reduce child support and for other relief, but did not address college expenses.  Defendant raised the issue in an extensive cross-motion.  The parties successfully mediated all the post-judgment issues, except college expenses and related fees.

A-2306-17T2

child's educational abilities and desires, and the parties' then existing financial ability."

Defendant argued that the out-of-state school offered the best preparation for the engineering career the child envisioned. Since she and the child had consulted with plaintiff about the child's desire to attend the school, defendant maintained that plaintiff was obliged to pay half the expenses. She also contended she was entitled to attorney's fees, pursuant to a PSA provision that shifted fees incurred to enforce the agreement.

Plaintiff responded that he was not obliged to pay half the costs because he never agreed to them. His attorney argued that plaintiff was not bound to contribute anything toward the child's college expenses, although he suggested his client might be willing to share $1000 to $2000 a semester if the child attended Rutgers as a commuter.

The trial court agreed that plaintiff was not obliged to pay half the out-of-state university's costs since he had not agreed to them. However, the court held that to exempt plaintiff from all responsibility to share college costs would be "terribly inequitable." The court surmised that plaintiff's responsibility should be based on the costs of attending Rutgers, and it referred the matter to mediation again, which was unsuccessful.

 A-2306-17T2

When the matter returned to the court, the judge decided that plaintiff should pay half the cost of attendance at a public university in New Jersey, after accounting for financial aid. However, the parties did not create a record of what that cost would be. The court concluded that the likely amount for a commuting student would be $20,000 a year, and it ordered plaintiff to pay $10,000 for freshman year, with a five-percent inflation adjustment for subsequent years. The court rejected defendant's claim for attorney's fees, after reviewing the factors set forth in Rule 5:3-5(c).

## II.

The Family Part exercises "substantial discretion" in determining parents' contribution to college expenses. Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 588 (App. Div. 2016) (quoting Gotlib v. Gotlib, 399 N.J. Super. 295, 308 (App. Div. 2008)). However, we owe no deference to a decision that is "manifestly unreasonable, [or] arbitrary," J.B. v. W.B., 215 N.J. 305, 326 (2013) (citation omitted), or that "ignores applicable standards," Gotlib, 399 N.J. Super. at 309. As we apply contract principles to the interpretation of a PSA, Pacifico v. Pacifico, 190 N.J. 258, 265-66 (2007), we review the trial court's interpretation of the PSA de novo, see Fastenberg v. Prudential Ins. Co. of Am.,

A-2306-17T2

309 N.J. Super. 415, 420 (App. Div. 1998) (stating that contract interpretation is a matter of law subject to de novo review).

As did the trial court, we conclude that the PSA did not compel plaintiff to bear half the out-of-state university's expenses because he did not agree to them. In the interests of "'stability of arrangements' in matrimonial matters" and amicable resolution of disputes, we will enforce the parties' intentions as expressed in a PSA's plain language, although the court retains discretion to modify terms based on changed circumstances, or to avoid "unconscionability, fraud, or overreaching." Quinn v. Quinn, 225 N.J. 34, 44, 47 (2016) (citations omitted). The PSA expressly confines the parties' obligation to pay half of college expenses that are both "reasonable and agreed upon." We must strive to give each word meaning. Washington Constr. Co. v. Spinella, 8 N.J. 212, 217 (1951). Thus, the parties' agreement is essential, as is the objective reasonableness of the amount.

Defendant does not contend that plaintiff breached the agreement to consult. Rather, she contends that the consultation implied agreement. We are not convinced. The PSA expressly left the issue of college costs for further negotiation. While the court is empowered to enforce an obligation to negotiate in good faith, it cannot enforce "an agreement to agree" that reflects the parties'

7

intention "to postpone agreement on a term essential to their ultimate contractual objective." 1 Corbin on Contracts § 2.9[3](A)(ii) (Timothy Murray ed., rev. ed. 2018). An enforceable contract requires "obligations . . . specifically described in order to enable a court . . . to ascertain what it was the promisor undertook to do." Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat'l Bank, 163 N.J. Super. 463, 474 (App. Div. 1978).

Since the PSA did not allocate college expenses absent the parties' agreement, the trial court was obliged to determine each parent's respective obligation according to the Newburgh and statutory factors. See Avelino-Catabran, 445 N.J. Super. at 591 n.8 (distinguishing between a PSA providing for equal division of college costs, where the trial court must enforce the agreement, and a PSA that is silent on "the specific division of college costs," where courts must determine "a fair allocation of expenses" under the Newburgh and statutory factors); see also Gotlib, 399 N.J. Super. at 307, 310 (holding the trial court must consider factors where the judgment of divorce allocated the cost of college "in accordance with appropriate legal standards").

The non-exhaustive list of Newburgh factors include:

> (1) whether the parent, if still living with the child, would have contributed toward the costs of the requested higher education; (2) the effect of the background, values and goals of the parent on the

8

reasonableness of the expectation of the child for higher education; (3) the amount of the contribution sought by the child for the cost of higher education; (4) the ability of the parent to pay that cost; (5) the relationship of the requested contribution to the kind of school or course of study sought by the child; (6) the financial resources of both parents; (7) the commitment to and aptitude of the child for the requested education; (8) the financial resources of the child, including assets owned individually or held in custodianship or trust; (9) the ability of the child to earn income during the school year or on vacation; (10) the availability of financial aid in the form of college grants and loans; (11) the child's relationship to the paying parent, including mutual affection and shared goals as well as responsiveness to parental advice and guidance; and (12) the relationship of the education requested to any prior training and to the overall long-range goals of the child.

[Newburgh, 88 N.J. at 545; N.J.S.A. 2A:34-23(a); see also Gotlib, 399 N.J. Super. at 309 (stating the Newburgh factors are "non-exhaustive").]

The court must consider each factor. See Raynor v. Raynor, 319 N.J. Super. 591, 616-17 (1999) (reversing a trial court's decision as to college contribution that gave only "cursory attention to" a certain Newburgh factor). While "the parents' ability to pay is clearly the most significant" of the Newburgh factors, a court should not consider it "to the exclusion of all others." Id. at 617 (citation omitted).[2]

---

[2]  Regarding capacity to pay, defendant highlights that plaintiff's income has increased since the divorce.  Plaintiff responds that his child-support and

Though the amount a parent would likely have paid for college, were the family still intact, has significance, a court should recognize that "any effort to gauge how parents would have reacted to educational expenses if they had remained married is fraught with uncertainty." Gac v. Gac, 186 N.J. 535, 544 (2006). The changes that often accompany divorce, including "heightened economic concerns and animosity, . . . may influence a parent's viewpoint as to how he or she would have acted if the family had remained together." Id. at 545. A court should, therefore, be wary of ascribing too much weight to its conclusion about a parent's hypothetical contribution had the divorce not occurred. See id. at 544-45.

The trial court did not undertake a Newburgh and statutory analysis in allocating the parties' shares of their son's college expenses. The trial court apparently predicated its allocation on the assumption that had the parties

---

alimony obligations, as well as the debt he assumed for the older children's education, render him unable to afford a significant contribution to his third child's college expenses. He also contends that defendant could increase her ability to pay by working full-time. We express no opinion on the ultimate determination of each party's ability to pay. However, we note that a parent's ability to pay is not limited to his or her current income. Rising college costs compel many parents to save for college well before a child reaches college age or, when saving is impossible or inadequate, to borrow funds for repayment later. Therefore, what a parent can reasonably bear depends on his or her current and projected earnings, age, assets and other financial obligations, among other factors.

A-2306-17T2

remained married, the child would likely have followed his two brothers by attending a New Jersey public university. However, the trial court failed to address specifically several other Newburgh factors, including the "most significant" – the parties' respective financial resources. Nor did it consider "the effect of the background, values and goals of [plaintiff] on the reasonableness of the expectation of the child for higher education"; the child's own financial resources or ability to earn income while at college; the availability of financial aid at other schools; the child's "relationship to [plaintiff], including mutual affection and shared goals as well as responsiveness to parental advice and guidance"; or how "the education requested" related to the child's own goals, aptitude, and prior training.

The court may not cap a parent's contribution at the cost of an in-state public college where the balance of Newburgh factors favor the child's private school of choice. Finger v. Zenn, 335 N.J. Super. 438, 444-45 (App. Div. 2000). Furthermore, the court's premise that attendance at an in-state public engineering program would cost $20,000 a year lacked any evidential support in the record.

We recognize that the trial court addressed the complex issue before it with sensitivity and that decisions about college expenses usually defy

11

numerical precision. In attempting to reach a fair and just result, the trial court must account for all relevant factors and base its consideration of each factor on evidence in the record. On remand, the court's analysis may necessitate the submission of additional evidence, such as evidence pertaining to the child's own financial resources or earning capacity; the opportunity for financial aid at Rutgers or another state school; the child's relationship with plaintiff; and how the education at the out-of-state private university compares to that of an in-state public university. Whether a plenary hearing is required is left to the trial court's determination. Finally, the issue of counsel fees will abide the trial court's decision on the merits, particularly inasmuch as the court must consider "the results obtained." R. 5:3-5(c).

Remanded for reconsideration. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2306-17T2